IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRANKLIN D. JACKSON                    *

     Plaintiff,                              *

v.                                                   *        Civil Action No. PX 16-744

                                                 *

LAWRENCE HOGAN, JR.,                 *

     Defendant.

****** 

**MEMORANDUM OPINION**

Pending is Defendant Governor Lawrence Hogan's motion to dismiss (ECF No. 10). The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the following reasons, the motion is granted.

I.        **Background**[1]

The Prince George's County Board of License Commissioners (the "Board") oversees the county's local rules regarding the sale of alcoholic beverages and helps enforce Maryland's alcoholic beverage laws. Plaintiff Franklin D. Jackson ("Jackson") was first appointed to the Board in 1996 for a three-year term by then-Governor Parris Glendening. He was reappointed seven consecutive times over the next eighteen years, with each gubernatorial appointment receiving approval from the Maryland Senate. Jackson served as the Board's Chairman for the last fourteen years of his tenure. ECF No. 1 at 2.

In 2011, then-Governor Martin O'Malley reappointed Jackson to a three-year term as the Board's Chairman. Jackson's term began on June 1, 2011 and the Maryland Senate confirmed his appointment on March 1, 2012. In February 2014, Governor O'Malley again reappointed

---

[1] Unless otherwise noted, all facts are construed in the light most favorable to the plaintiff as the nonmoving party.

Jackson to Chairman of the Board. His new term began on June 1, 2014 and was expected to end on May 31, 2017. While Jackson assumed his position as Chair, his appointment was not confirmed by the Senate during the 2014 legislative session.

On February 20, 2015, the newly-elected Governor, Defendant Lawrence Hogan ("Governor Hogan"), submitted for Senate confirmation a list of 331 "Green Bag" appointments to a variety of state and local offices.[2] ECF No. 10-1 at 8–9. Included on that list was Governor Hogan's nomination of Charles Wickliff Caldwell, III ("Caldwell") to serve as the Chairman of the Board—the position then occupied by Jackson. The Senate took no action on Jackson's appointment during the 2015 legislative session, but confirmed Caldwell's appointment on March 6, 2015. ECF No. 10-5 at 3. Jackson was removed from his Chairman position and as a member of the Board shortly thereafter, with two years and two months left in his three-year term. ECF No. 1 at 4.

Jackson alleges that he was never notified of Governor Hogan's intention to replace him and was not provided written evidence of Caldwell's new designation. *Id.* at 4–5. In fact, it was not until March 18, 2015 that Governor Hogan's office contacted Jackson to inform him that Caldwell was the new Chair of the Board and that Jackson's tenure was over. *Id.* at 5.

Naturally, a dispute arose between Jackson and Caldwell, who both claimed to be the rightful Chairman of the Board. Jackson refused to acknowledge Caldwell as the Chairman and attempted to continue to exercise control over the Board. On March 9, 2015, Jackson, still acting as the Board's Chairman, delivered a letter to Governor Hogan informing the Governor that Jackson was legally entitled to serve as the Chairman for a three-year term ending May 31, 2017 pursuant to Governor O'Malley's appointment. ECF No. 1 at 3.

---

[2] The term "Green Bag" refers to the green satchel traditionally used once every year to bring the gubernatorial nominations to the Maryland State Senate.

Jackson acknowledges that his appointment was never confirmed by the Maryland Senate, but argues that confirmation is unnecessary. *See* ECF No. 15 at 13–19. At all relevant times, a Governor's authority to make appointments to the Boards of License Commissioners derived from former § 15-101 of Article 2B of the Maryland Code. ECF No. 15 at 15. Subsection (r) of § 15-101 specified the procedures the Governor had to follow in making appointments to the Prince George's County Board of Commissioners. According to Jackson, subsection (r) only required that the Governor appoint members of the Board from a group selected by the central committees of the county's two dominant political parties and did not require that such appointments are subject to Senate confirmation. Jackson was nominated by the Democratic Central Committee and appointed by Governor O'Malley in 2014. ECF No. 1 at 2; ECF No. 15 at 2–3. Accordingly, Jackson argues that his 2014 appointment satisfied the statute's requirements, placing the burden on Governor Hogan to show cause before replacing Jackson on the Board.

On March 23, 2015, the Board filed suit against Jackson, alleging that Jackson was not confirmed by the Senate for a new term, and so was properly replaced by Governor Hogan's confirmed appointment of Caldwell. *See Bd. of License Comm'rs for Prince George's County v. Jackson*, No. CAL15-04881 (P.G. Cir. Ct. filed Mar. 23, 2015); ECF No. 10-4 at 50–54. In its complaint, the Board sought to enjoin Jackson from attempting to exercise any power as Chairman of the Board. It also sought a writ of mandamus ordering Jackson to "relinquish his gavel and cede all Chairman power to the rightful Chairman, Charles W. Caldwell, III." ECF No. 10-4 at 53–54. On March 23, 2015, the circuit court granted the Board's temporary restraining order and set in a full hearing for April 1, 2015. On April 23, 2015, the parties entered into a consent order stating Jackson is no longer the Chair or a member of the Board of License

3

Commissioners from that point forward. *Bd. of License Comm'rs for Prince George's County*,

No. CAL15-0488.

Jackson then filed a complaint with the Department of Budget and Management

("DBM") under the Maryland Whistleblower Law, Md. Code. Ann., State Pers. & Pens. § 5-301

et. seq., arguing that Governor Hogan improperly terminated Jackson as Chairman because

Jackson had lodged a formal complaint to Governor O'Malley about a former Democratic

member of the Board. *See Jackson v. Bd. of License Comm'rs* (Md. Office of Admin. Hearings,

Feb. 29, 2016); ECF No. 10-4 at 14–36. Jackson's complaint was dismissed and he appealed the

DBM's decision to the Maryland Office of Administrative Hearings ("OAH"). The

Administrative Law Judge concluded that Jackson, as a Board Commissioner, was not an

executive branch employee covered by the Maryland Whistleblower Law. Because Jackson was

not an executive branch employee, DBM did not have jurisdiction to hear Jackson's

Whistleblower complaint, and thus OAH did not have jurisdiction to hear the appeal. Jackson did

not appeal the ALJ's decision to the Prince George's County Circuit Court.

On March 14, 2016, Jackson filed the instant Complaint pursuant to 42 U.S.C. § 1983.

Jackson alleges that Governor O'Malley's February 2014 appointment vested him with a

protected property interest in his employment on the Board through May 2017. Governor Hogan

deprived Jackson of this property interest when he appointed Caldwell to Board Chairman

without providing Jackson notice or an opportunity to be heard in violation of Jackson's

Fourteenth Amendment right to procedural due process as guaranteed by the United States

Constitution.

## II.      Standard of Review

Governor Hogan has moved to dismiss Jackson's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

A motion to dismiss tests the sufficiency of a complaint, and thus the Court is generally limited to a review of the allegations in the complaint itself. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016) (citations and internal quotation marks omitted). A court, however, may properly take "judicial notice of matters of public record" and consider those documents in reviewing a Rule 12(b)(6) motion without converting the motion into one for summary judgment. *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)). This Court will therefore rely on the legislative history and court documents related to Jackson's appointments and eventual termination without converting Governor Hogan's motion into one for summary judgment.

**III.** **Analysis**

**A.** **Collateral Estoppel**

As a threshold matter, Governor Hogan contends that Jackson is collaterally estopped from arguing that he is legally entitled to a Board position. "Collateral estoppel, or issue preclusion, bars a party from re-litigating an issue that he or she has already litigated unsuccessfully in another action." *Culver v. Maryland Ins. Comm'r*, 175 Md. App. 645, 653–54 (2007).  In the prior state court action, Jackson entered into a consent order memorializing that,

> [d]ue to the executive actions of the Governor of Maryland with the advice and consent of the Senate of Maryland; the parties agreed to the following:
>
> 1. That Franklin D. Jackson is no longer the Chair of the Board of License Commissioners.
>
> 2. That Franklin D. Jackson is no longer a member of the Board of License Commissioners.

ECF No. 10-4 at 56. According to Governor Hogan, Jackson conceded that he is no longer a member of the Board, as is thus prevented from re-litigating whether he is entitled to a Board position. ECF No. 10-1 at 23–25.

As Governor Hogan correctly states, a consent order can be granted preclusive effect. *See MPC, Inc. v. Kenny*, 279 Md. 29, 34 (1977). The Maryland Court of Appeals has made clear, however, that a consent order should later be conclusive only to the extent that the parties intended the result or the issue was actually litigated:

> Where the agreement upon which a consent judgment is based is fairly to be construed as providing that the parties should be bound collaterally upon a certain point, that agreement will and should generally be given effect. An intention to be bound in this way should not however be found unless the language or admissible evidence affirmatively points to it, and such an intention should not be inferred from the circumstance, taken alone, that the agreement or judgment contains a stipulation or recital of the fact's existence.

*Welsh v. Gerber Prod., Inc.*, 315 Md. 510, 520 (1989) (quoting Fleming James, Jr., *Consent Judgments as Collateral Estoppel*, 108 U. Pa. L. Rev. 173 (1959)).

The consent order here simply states that Jackson is no longer the Chairman or a member of the Board. It was executed in the context of a request for a writ of mandamus and for injunctive relief, and thus is fairly construed as a way to prevent Jackson from disrupting future Board proceedings and nothing more. In other words, there is no evidence that the parties intended the consent order to have a preclusive effect on future proceedings, preventing, for example, Jackson from challenging Governor Hogan's appointment and termination decisions on constitutional grounds.

More fundamentally, however, "for collateral estoppel to apply, the issue must have been actually litigated and essential to the judgment." *United Book Press, Inc. v. Maryland Composition Co.*, 141 Md. App. 460, 477 (2001). This is precisely why consent orders are not normally given preclusive effect. *Id.* at 477–78 (stating that collateral estoppel does not normally apply to judgments entered by confession, consent, or default, because none of the issues were actually litigated) (quoting Restatement (Second) of Judgments, § 27 (1980)). Here, the circuit court record lacks any evidence that the parties litigated the issue of whether Jackson was entitled to a three-year term as Chair of the Board for a period ending in May 31, 2017. While the circuit court held a full hearing on April 1, 2015 with Jackson in attendance, the circuit court did not reach the merits of the claims before it. Under these circumstances, the consent order cannot be given preclusive effect.

## B.     Qualified Immunity

Governor Hogan's principal argument is that Jackson lacks any property interest in his position as Board Chair, and so he was not entitled to procedural due process under the

Fourteenth Amendment. Alternatively, Governor Hogan argues that even if removing Jackson somehow violated his constitutional rights, Hogan is nonetheless immune to suit because the constitutional right was not clearly established at the time Jackson was removed.

The doctrine of qualified immunity is designed to ensure that government officials performing discretionary functions can exercise their duties "free from the specter of endless and debilitating lawsuits." *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991). Without qualified immunity, a substantial risk exists that fear of personal liability and harassing litigation will "unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Government officials are thus entitled to qualified immunity for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *Accord Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

The resolution of a qualified immunity defense is a two-pronged inquiry: (1) whether the facts established by the plaintiff make out a violation of a federal right; and (2) whether that right was "clearly established" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts are free to reach either of these two prongs first in light of the circumstances of the case at hand. *Id.* at 236.

Under the Fourteenth Amendment, a state is prohibited from discharging a public employee who possesses a property interest in continued employment without due process of law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (holding that a public employee classified as a "civil servant" under Ohio law has a property interest in continued employment, of which the State cannot deprive him without due process). The Constitution itself does not create property interests; instead, "they are created and their dimensions are defined by

existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  To establish a constitutionally-protected property interest, a plaintiff must demonstrate that he has a legally recognized expectation that he will retain his position. A legitimate expectation of continued employment may derive from a statute, a contract provision, or an officially sanctioned rule of the workplace. *Perry v. Sindermann*, 408 U.S. 593, 601–02 (1972).

The statute Jackson relies upon in claiming he has a legitimate expectation of continued employment is former Article 2B of the Maryland Code. Article 2B provided for the establishment of boards of license commissioners in each Maryland county at the time Jackson was replaced by Caldwell. Section 15-101 of Article 2B, titled "Appointment by Governor and Senate," was divided into two parts. Subsection 15-101(a) provided general default rules for the composition of boards and the appointment of members for Baltimore City and the Maryland counties that chose to adopt the default rules. Each county could adopt the default provisions in § 15-101(a) or establish its own procedures.

Subsections 15-101(b) through (y) of the Article listed the specific procedures adopted by each county. Each Maryland county's procedure was addressed in separate subsections, none of which expressly reference subsection (a)'s appointment procedures.

The procedure in subsection (a) of Former § 15-101 states:

> For the jurisdictions in which this section is effective, the Governor, biennially, *by and with the advice and consent of the Senate*, if in session, and if not in session, then the Governor alone, shall appoint three persons who shall constitute and be styled "The Board of License Commissioners for Baltimore City or . . . . . . County", as the case may be.

(emphasis added). The specific procedures adopted by Prince George's County were provided in former § 15-101(r), which states, in pertinent part:

The Governor shall appoint 4 of the 5 Commissioners from the political party obtaining the highest number of votes in the last gubernatorial general election in the county, and the Governor shall appoint 1 Commissioner from the political party obtaining the next highest number of votes in the county election.

Clearly, former § 15-101(r) gave the Governor the authority to appoint the Board's members, but did not mention whether the Governor's appointments are subject to Senate confirmation. Jackson argues that this omission means Prince George's County opted out of subsection (a)'s Senate confirmation requirement. Thus, Jackson argues that his position as Chair of the Board became final after Governor O'Malley appointed him to the position in 2014. Jackson notes that several other county-specific subsections explicitly called for the Senate confirmation of board appointments. *See, e.g.*, § 15-101(u) *Somerset County* ("The appointments are subject to confirmation by the Senate of Maryland."); § 15-101(y) *Worcester County* (same); § 15-101(g) *Caroline County* (same). If the General Assembly intended for appointments to the Prince George's County Board to be subject to Senate confirmation, so says Jackson, it would have inserted a similar provision into subsection (r).

Governor Hogan argues that subsection (r)'s omission of § 15-101(a)'s "by and with the advice of the Senate" language does not necessarily eliminate the Senate confirmation requirement. *See* ECF No. 10-1 at 15–16. Section 15-101(r) contains none of the language regarding the qualifications for nominees or the designation of a Board Chairman found in subsection (a), implying that the General Assembly intended § 15-101(a)'s procedures relating to the appointment of board members to be incorporated into subsection (r).

Governor Hogan also relies on *Nesbitt v. Fallon*, 203 Md. 534 (1954) for the proposition that all Board appointments are subject to Senate confirmation. In that case, the appellant was appointed to the Board of License Commissioners for Anne Arundel County, but his

appointment was not confirmed by the Senate. The Maryland Court of Appeals held that Senate confirmation was required based on the statutory framework and the Maryland Constitution.

Importantly, the statutory framework at issue in *Nesbitt* was different than that which is at play in this case. In *Nesbitt*, Article 2B explicitly stated that the Anne Arundel County Board had adopted subsection (a)'s general appointment requirements, including that such appointments were subject to Senate confirmation. *Id.* at 540–41. The Court of Appeals also based its decision on § 10 of Article II of the Maryland Constitution, which states that "civil servants" are nominated "by and with the advice and consent of the Senate." Jackson notes that § 10 requires Senate confirmation "unless a different mode of appointment be prescribed by the Law creating the office." Md. Const. art. II, § 10.  Jackson argues that § 15-101(r) prescribes a "mode of appointment" different than that which is found in the Maryland Constitution by omitting the Senate confirmation requirement. *See* ECF No. 15 at 14.

Because *Nesbitt* does little to advance the analysis, the Court turns to the General Assembly's 2016 recodification of Article 2B, the "Alcoholic Beverages Article." Under this new Article, each county election requirements are re-codified into separate titles. *See generally* Md. Code Ann., Alcoholic Beverages (West 2016). Title 26 of the Article, specific to Prince George's County, clearly states that all appointments to the Board shall be made "with the advice and consent of the Senate" during the General Assembly session.  Md. Code Ann., Alcoholic Beverages, § 26-202 (West 2016). Section 26-203, relating to the appointment of a Prince George's County Board chairman, states that "[i]n making the appointments, the Governor shall designate a chair from among the members of the Board." *Id.* at § 26-203.

Notably, the Revisor's Note to § 26-202 states that § 26-202's "new language [is] *derived without substantive change*" from former Article 2B's general provisions in §15-101(a) and the

subsection specific to Prince George's County, 15-101(r). *Id.* (emphasis added). *See also DeBusk v. Johns Hopkins Hosp.*, 342 Md. 432, 443 (1996) (noting that the "Revisor's Note is a source to which we regularly turn concerning the intent of the Legislature"). The United States Supreme Court clearly instructs that "[u]nder established canons of statutory construction, 'it will not be inferred that [the legislature], in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed.'" *Finley v. United States*, 490 U.S. 545, 554 (1989) (quoting *Anderson v. Pacific Coast S.S. Co.*, 225 U.S. 187, 199 (1912)). *See also Trustees of Heating, Piping & Refrigeration Pension Fund v. Milestone Const. Servs., Inc.*, 991 F. Supp. 2d 713, 718–19 (D. Md. 2014). *Accord DeBusk*, 432 Md. at 444.

Here, the Maryland legislature made clear that the changes to Article 2B were designed to implement the former procedure requiring Senate confirmation.  As such, the new article reaffirms that up to the time of its revision, Senate confirmation for Jackson's Board position was required. This confirmation never occurred. Accordingly, Jackson did not have a property interest in his Board position and was not entitled to procedural due process before Governor Hogan replaced him. Jackson's removal, therefore, did not violate his Fourteenth Amendment right to procedural due process.

Even if Jackson could prove a violation of a federal right, such a right was not clearly established at the time Governor Hogan replaced Jackson on the Board. "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)). If public officials of reasonable competence could differ on the

12

lawfulness of Governor Hogan's actions, the defendants are entitled to qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Prior to Jackson's removal at the center of this case, a long succession of governors and legislatures operated with the understanding that any Board member had to be confirmed by the Senate for the appointment to be official. Jackson was first appointed to the Board in June 1996 by Governor Parris Glendening and was continuously re-appointed by subsequent governors to terms of service through May 2014. Each time Jackson was nominated to the Board, his nomination was eventually presented to the Maryland Senate for confirmation. *See* ECF No. 10-4 at 5–9.[3]  Similarly, Jackson's fellow Board members were both nominated and confirmed by the Senate. Governor Hogan's belief that he could legally replace Jackson prior to Senate confirmation was thus reasonable and for which no clearly established law existed to the contrary. Even if Governor Hogan arguably violated Jackson's procedural due process rights by terminating him, therefore, the violation was not clearly established. Governor Hogan is entitled to qualified immunity.

---

[3] Senate confirmation of gubernatorial appointments including Jackson can be found at Dep't of Legislative Servs., *Gubernatorial Appointments: Terms of Office for Statewide and Local Boards and Commissions that Expire in 2011*, at 141 (2010), http://mgaleg.maryland.gov/Pubs/LegisLegal/2010-gubernatorial-appointments-expiring-2011.pdf; Dep't of Legislative Servs., *Gubernatorial Appointments: Terms of Office for Statewide and Local Boards and Commissions that Expire in 2014*, at 116 (2013), http://mgaleg.maryland.gov/Pubs/LegisLegal/2013-gubernatorial-appointments-expiring-2014.pdf.  At the 12(b)(6) stage, the Court considers these documents as a matter of public record of which the court may take judicial notice or as authentic and integral to the complaint. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004) (noting it was proper during Rule 12(b)(6) review to consider "publicly available [statistics] on the official redistricting website of the Virginia Division of Legislative Services") (citing *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986)); *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) ("[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed."). Jackson does not dispute the authenticity or accuracy of these legislative services publications. Instead, he argues that he was unaware of the confirmation process during his time as a member of the Board and that he has never heard of a member being removed or replaced due to lack of Senate confirmation. ECF No. 15 at 3.

## IV.     CONCLUSION

For the foregoing reasons, Governor Hogan's motion to dismiss is granted. A separate

order will follow.


 11/14/2016                                                         /S/                        
Date                                                                             Paula Xinis
United States District Judge